21541. JAMERSON v. CAMPBELL, Commissioner, *et al.*

ARGUED FEBRUARY 12, 1962—DECIDED APRIL 10, 1962.

*D. L. Lomenick, Jr.*, for plaintiff in error.

*Eugene Cook, Attorney-General, Douglas Kerr, Assistant Attorney-General, Robert E. Coker, Robert Culpepper, Jr.*, contra.

GRICE, Justice. This review requires determination of whether Walker County had authority, in view of certain provisions of the Georgia Constitution, to enter into contracts with the State Revenue Commissioner of Georgia and a private concern, relative to the revaluation, reappraisal and equalization of that county's tangible property for ad valorem tax purposes.

The trial court sustained general demurrers to and dismissed a petition filed by a taxpayer, Lawrence Jamerson, against (1) Albert Campbell, Commissioner of Walker County Roads and Revenues, (2) three named individuals comprising the Walker County Board of Tax Assessors, and (3) Southeastern Appraisal and Tax Mapping Service, Division of E. H. Schmidt & Associates, Inc., hereinafter referred to as "Southeastern." That petition sought to enjoin the Walker County Commissioner and Tax Assessors from withdrawing, disbursing or paying to Southeastern any funds provided by the State Revenue Commissioner pursuant to a contract between Walker County and the State Revenue Commissioner and also to prohibit Southeastern from performing any further services under its contract with Walker County.

The two contracts sought to be enjoined were executed on July 6, 1961. The one with Southeastern called for that concern, in consideration of $148,600.00, to perform for Walker County property mapping, platting, cataloging, indexing, appraisal and valuation services according to certain specifications. The contract with the State Revenue Commissioner recited that he approved Walker County's contract with Southeastern and the valuation and equalization program submitted by that county, and that, pursuant to the act of 1961 (Ga. L. 1961, p. 107), authorizing him to aid counties in defraying the costs of this type program, he would pay to Southeastern, in behalf of the county, the $148,600.00 consideration for its services. This latter contract further provided that such advanced sum was to be repaid by Walker County in five equal annual instalments, beginning on December 31, 1962, in default of which the county authorized the State Treasurer to pay to the Revenue Commissioner all funds due that county for aid in road construction or maintenance, or both; and that such county would take certain administrative steps in the execution of its agreement with Southeastern.

The petition as amended alleged that at the time such contracts were entered into and at all times since then, there were no available funds in the county treasury to pay the contract price; that no levy had been made for this purpose and that no levy could lawfully be made for this purpose in 1961; and that

these contracts were entered into without authority by the Commissioner of Roads and Revenues of Walker County and the Board of Tax Assessors of that county and were ultra vires, null and void.

The attacks may be summarized as follows: (1) that the contracts were not an attempt to supply a casual deficiency of revenue and, therefore, violate Art. VII, Sec. VII, Par. I of the Georgia Constitution (*Code Ann.* § 2-6001) (commonly referred to as the Debt Limitation Clause) in that they incur a new debt without the assent of the qualified voters of the county in an election for that purpose; (2) that their subject matter is not within the purposes for which a tax can be levied by the county under Art. VII, Sec. IV, Par. I of the Constitution (*Code Ann.* § 2-5701); and (3) that they violate a 1941 amendment carried forward to Art. VII, Sec. VII, Par. I of the 1945 Constitution (*Code Ann.* § 2-6001), having application only to Walker County and requiring it thereafter to be on a cash basis, in that such contracts create a large debt to be repaid by that county.

The act of 1961 (Ga. L. 1961, p. 107), in pursuance of which the contracts were made, is entitled "An Act to authorize State aid to counties in defraying the cost of property valuation and equalization programs for ad valorem tax purposes. . ." It recites, among other things, that the State Revenue Commissioner is authorized to aid counties in employing persons, firms and corporations to assist county boards of tax assessors in mapping, platting, cataloging, indexing, and appraising property for ad valorem taxes and to make revaluations, to search out and appraise unreturned property. It recites further that this aid is provided to encourage counties to enter into such programs; that the aid shall be accomplished by the State paying the portion of the program as each county's financial condition requires; that the State Revenue Commissioner shall administer this act and with two other officials shall determine the counties to receive such aid; and that he is authorized to promulgate necessary rules, regulations and instructions to administer the act. This act also provides that the State Revenue Commissioner and any such county may enter into a contract respecting the cost of such program and repayment to the State; that this

aid shall be repaid to the State by such county in five equal annual instalments, without interest, the first on December 31st of the following year; and that, in the event of default, the State Revenue Commissioner shall have authority to receive all funds due that county for aid in county road construction or maintenance, or both. The act provides further that the limitations on the millage levy prescribed in *Code Ann.* §§ 92-3702 and 92-3706 shall not apply to any levy which a county may make to defray the cost of such program; that such repayments shall not constitute debts within the meaning of Sec. VII, Art. VII of the State Constitution; and that the aid shall not be construed as an assumption by the State of county debts within the meaning of Par. V, Sec. III, Art. VII of such Constitution.

No attack is made by the plaintiff upon any provisions of this statute, and thus no question as to its constitutionality is involved here. Only the contracts are attacked.

1. However, we do not pass upon any of those attacks. The contracts were made pursuant to and in reliance upon the 1961 statute above referred to which, in the absence of any attack upon it, is presumed to be valid. Under these circumstances the contracts must also be presumed valid. Compare *Williams v. O'Connor*, 208 Ga. 39 (64 SE2d 890). For this reason, the trial judge properly sustained the general demurrer to the amended petition.

*Judgment affirmed. All the Justices concur.*